UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Nov 14  10 10 AM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

EJL, INC. and EDMOND LAFLAMME, )
    Petitioner )
)
v. ) C.A. No. 302-CV-2303-MRK
)
TRUGREEN LANDCARE, LLC, )
    Respondent )

**RESPONDENT'S SUPPLEMENTAL MEMORANDUM
IN RESPONSE TO THIS COURT'S OCTOBER 29, 2003 ORDER**

**I.**     **Introduction.**

Now comes the Respondent, TruGreen Landcare, LLC ("TruGreen" or "Respondent"), and respectfully submits this supplemental memorandum in response to this Honorable Court's October 29, 2003 Order (the "Order"). In the Order, the Court invited the parties to submit supplemental briefs addressing "whether or not the Court is permitted to consider testimony, written or otherwise, regarding the arbitrators' deliberations."[1] This Court can indeed inquire into the deliberation process, and if this case does not present a situation to do so, no case ever will.

**II.**     **Argument.**

    **A.**     **The Caselaw Authorizes Inquiry Into the Deliberation Process.**

---

[1] The Order stated that the supplemental memoranda were due by November 11, 2003, but at the hearing the Court stated that the memoranda were due by November 14, 2003. LaFlamme's counsel telephoned the Court to ask about the discrepancy and was advised that the due date was in fact November 14, 2003.

Unless otherwise noted, the defined terms used herein have the same meaning as in TruGreen's Memorandum in Support of its Motion for an Order Vacating the Arbitration Award.

{00045974.DOC}

A court may question an arbitrator's award "and the process by which it was arrived" once the court finds clear evidence of impropriety. *See* In re Arbitration Between Andros Compania Maritima, S.A., of Kissavos, 579 F.2d 691, 702 (2d Cir. 1978); *see also* In re Advest, Inc. and Asseoff, 1993 WL 119690 (S.D.N.Y.). In Andros Compania Maritima, the Second Circuit Court of Appeals stated that "questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented." Andros Compania Maritima, S.A., of Kissavos, 579 F.2d at 702. Thus, the Second Circuit clearly anticipates situations whereby arbitrators are questioned when a Court is presented with evidence of impropriety.

Courts will review an arbitrator's written opinion or dissent to determine whether there is impropriety sufficient to warrant inquiry into the deliberations. For example, in In re Fertilizantes Fosfatados Mexicanos, S.A., 751 F. Supp. 467 (S.D.N.Y. 1990), the court relied upon an arbitrator's dissent to determine that further inquiry into the deliberation process was warranted, in the form of an evidentiary hearing. Similarly, in Advest and Asseoff, the court relied upon one of the arbitrator's written opinion to determine whether further inquiry was warranted. In re Advest, Inc. and Asseoff, 1993 WL 119690, *2-3.

As for what evidence of impropriety warrants inquiry into the deliberation process, it has been enough when one arbitrator from a panel of three has accused one of the others of "misfeasance and malfeasance." For example, in In re Fertilizantes Fosfatados Mexicanos, the court conducted an evidentiary hearing to allow an opportunity for the losing party, and the accusing arbitrator, to substantiate its allegations

of arbitrator bias. In re Fertilizantes Fosfatados Mexicanos, S.A., 751 F. Supp. 467. The court stated that while the deliberation process is confidential, inquiry into that process was permitted "because of the seriousness of the charges made by the dissenter against the other two arbitrators." Id. at 468.

Similarly, in Advest and Asseoff, the court acknowledged that had one of the arbitrators accused another of improper conduct, inquiry into the deliberations would have been warranted. See Advest and Asseoff, 1993 WL 119690, *3. There, the court stated, "[A] complete reading reveals that Chairman Greenberg does not charge his colleague with such improper conduct as to warrant the extraordinary step of inquiring into the arbitrators' deliberations."[2] Id. If Chairman Greenberg had charged his colleague with such improper conduct, the court would have inquired into the deliberation process. See id., relying upon Fertilizantes Fosfatados Mexicanos, S.A., 751 F. Supp. 467; cf. DeFrayne v. Miller Brewing Co., 444 F. Supp. 130, 131 (D.C. Mich. 1978) ("where an objective basis exists for a reasonable belief that misconduct has occurred, the parties to the arbitration may depose the arbitrators relative to that misconduct").

Thus, if there is evidence of impropriety (which can be based upon one arbitrator's charges against another), then the court is permitted—and arguably compelled in order to preserve integrity and fairness—to inquire of the deliberation process. Such is the case here.

---

[2] The improper conduct charged in that case (which was insufficient to warrant further inquiry) was that one of the arbitrators interfered with the questioning of witnesses and wore "mental earplugs" since it appeared he had formed an opinion as to liability from early on. Advest and Asseoff, 1993 WL 119690, *2. The improper conduct charged in this case is far more egregious.

{00045974.DOC}                         3

### B. TruGreen's Party-Appointed Arbitrator Accused LaFlamme's Party-Appointed Arbitrator of Clear Impropriety, Including Making Intentionally False Statements to the Neutral Arbitrator.

In the Dissent, TruGreen's Party-Appointed Arbitrator stated that LaFlamme's Party- Appointed Arbitrator failed to conduct himself in accordance with the Code of Professional Conduct of the American Institute of Certified Public Accountants or in a manner outlined in the Guidelines for Arbitrators prepared by the American Arbitration Association. "He **intentionally mislead the Neutral Arbitrator** and exploited the Neutral Arbitrator's lack of accounting knowledge." Dissent, at 1 (emphasis added).

Further, according to TruGreen's Party-Appointed Arbitrator, LaFlamme's Party-Appointed Arbitrator made outright false statements to confuse intentionally the Neutral Arbitrator, a non-accountant:

> During our deliberations, I asked Claimant's Party Arbitrator if this was his experience [that companies that record a bad debt expense on a monthly basis generally do so only for monthly reporting and "true up" the results for the year using the collectability review]. He said, "No," implying that the percentage of sales approach is his only experience and general practice today. **Simply put, I do not believe it. Knowing his firm and the types of client's [sic] typical to his firm, I can only believe that his intent in making this statement was to confuse the Neutral Arbitrator.**
>
> The potential adjustments that were proposed for Bad Debt Expense were $16,804 using the income statement approach, $17,760 using the percentage of aging categories approach (end of year only) and $54,499 using an evaluation approach with actual historical data, the latter two, balance sheet approaches. Consequently, the Claimant's Party Arbitrator stated that the sales approach was his only experience so that the subtractive adjustment would be as low as possible. Further, allowing the Neutral Arbitrator to make the mistake of deducting the $12,000 reserve from the income statement approach, **underscores the Claimant's Party Arbitrator's intent to reach a favorable outcome for Claimant without consideration of GAAP.**

\* \* \*

> Many times during the discussion, the Claimant's Party Arbitrator made statements such as "that is not consistently applied," alluding to the requirement that accounting principles should be applied consistently and suggesting that there was a consistency issue in the discussion and in my opinion **intending to add to the confusion, not to clarify it.**
>
> For example, at one point the Claimant's Party Arbitrator stated that he thought the checks used to support the invoices in questions [sic] were duplicate payments and that they should be excluded because the Respondent did not provide proof that they were not duplicate payments. We spent an hour and a half to two hours on the duplicate payment discussion alone. There was never any testimony or exhibits presented by anyone that even suggested that there might be duplicate payments and the only way of proving that there were not duplicate payments would have been for the Respondent to produce all of the accounting documentation for the year. **I have no doubt that the Claimant's Party Arbitrator raised the issue, knowing that it was not in evidence, solely to confuse the Neutral Arbitrator and to obfuscate the real issues within this category.**

Dissent, at 13-15 (emphasis added).

## III. Conclusion.

While the circumstances in which the Court will inquire into the deliberation process are limited by the "evidence of impropriety" standard, the hurdle is met in this case. In fact, failing at least to inquire of the arbitrators because of the accusations of bias would implicitly sanction such bias. This Court cannot let that happen.

Respectfully submitted,
TRUGREEN LANDCARE, LLC
By its attorneys,

/s/ Paul Michienzie

Paul Michienzie, Esq. – Pro Hac Vice,
Temp. Fed. ID CT 23367
David P. Russman, Esq. – Fed. Bar No.: CT 410930
Michienzie & Sawin LLC
745 Boylston Street
Boston, MA 02116
Tel. 617-227-5660

{00045974.DOC}                               5

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for EJL, Inc. and Edmond LaFlamme, Joseph Yamin, Esq., Yamin & Grant, LLC 182 Grand Street, Suite 417 Waterbury, CT 0670 by mail on __11/13/03__.

_David P. Russman_
David P. Russman